CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

August 30, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
            DEPUTY CLERK

| | | |
|---|---|---|
| GARI G., | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:23cv00026 |
| v. | ) | |
| | ) | REPORT & RECOMMENDATION |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | By:    Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

Plaintiff Gari G. asks this Court to review the Commissioner of Social Security's final decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 404–434. Compl., ECF No. 1. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record ("R."), ECF No. 5-1; the parties' briefs,[1] ECF Nos. 8, 15; and the applicable law, I find that substantial evidence supports the Commissioner's final decision that Gari was not disabled during the relevant time. R. 1, 15–26. Accordingly, I respectfully recommend that the presiding District Judge affirm this decision under 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it cannot

---

[1] I deny Gari's request for oral argument, Pl.'s Br. 3, ECF No. 8, because the facts and legal contentions are adequately presented in the materials before the court and a hearing would not aid in the decisional process. *Vaughn v. Astrue*, 412 F. App'x 559, 560 (4th Cir. 2011); W.D. Va. Gen. R. 4(c)(2). Arguments or issues not presented in Gari's counseled brief are waived. *See, e.g., Janell W. v. Kijakazi*, No. 22cv2339, 2023 WL 4456848, at *4 (D. Md. July 11, 2023) (citing *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief.")); *Smith v. Walmart, Inc.*, No. 7:22cv568, 2023 WL 5215376, at *4 n.2 (W.D. Va. Aug. 14, 2023) (Dillon, J.).

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration

requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work available in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

This is Gari's second application for disability benefits. R. 92. In February 2015, Gari applied for DIB alleging she had been disabled since September 2013 because of degenerative joint disease ("DJD") and a torn anterior cruciate ligament ("ACL") in her right knee. *See* R. 71. On November 28, 2017, ALJ Karen Robinson issued a written decision finding that Gari's severe knee impairments restricted her to "sedentary" work with some limitations on using her right leg to push or pull, engaging in certain postural activities, and working around vibrations or hazards. R. 71, 73. ALJ Robinson concluded that Gari could still do her past work as a hotel manager despite these restrictions. R. 78–79. The Appeals Council declined to review this decision in September 2018, R. 85–87, and Gari did not seek judicial review under 42 U.S.C. § 405(g), R. 21. ALJ Robinson's decision therefore establishes as a matter of law that Gari was "not disabled" on or before November 28, 2017. *See* R. 21; 20 C.F.R. § 404.955.

*

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

Gari filed this DIB claim in January 2019. R. 285–86. She alleged that she had been disabled since November 29, 2017, because of right-knee osteoarthritis and a torn meniscus, a torn ACL, and a torn cadaver ACL in her right knee. R. 92. Gari was 39 years old on her alleged onset date, R. 91, making her a "younger" person under the regulations, 20 C.F.R. § 404.1563(c). Virginia Disability Determination Services ("DDS") denied Gari's DIB claim initially in April 2019, R. 101, and upon reconsideration in July 2019, R. 114. As part of its determinations, DDS defined the relevant period as November 29, 2017, the alleged onset date, through December 31, 2018, Gari's date last insured ("DLI").[3] R. 96–97, 109–13. The DDS physicians who reviewed Gari's records in 2019 both opined that she had a "severe" medically determinable impairment ("MDI") relating to dysfunction of a major joint during this roughly 13-month period, R. 97–98, 110–11, but that her record contained "insufficient evidence to [further] assess the severity of the [MDI] and any impact on daily functioning prior to the DLI." R. 109–10 (July 2019); *accord* R. 96–97 (Apr. 2019). DDS also determined that a physical consultative examination ("CE") was not required to evaluate Gari's entitlement to DIB. *See* R. 96, 109.

On August 2, 2022, Gari appeared with counsel and testified at a hearing before ALJ H. Munday. R. 34–54. A vocational expert ("VE") also testified. R. 54–64. At the end of this hearing, Gari's attorney mentioned in passing that "she very well could meet" Listing 14.09, for inflammatory arthritis. R. 60. He also noted that Gari "would be very receptive if the [agency] would want to send her" for a physical CE, R. 62, "to get another medical" opinion about her knee, R. 61. *See* R. 61–64 (discussing R. 440–41, 442, 443, 532–33, 673, 781). ALJ Munday acknowledged that the agency could order a post-hearing CE or send a claimant's "file to a

---

[3] To qualify for DIB, Gari must prove that she became disabled on or before her DLI. *See Johnson*, 434 F.3d at 655–56; 20 C.F.R. §§ 404.101(a), 404.131(b).

medical expert and get an opinion . . . under certain circumstances." R. 63; *see* R. 62–64. She

was "not saying" those options were warranted in Gari's case, however, because Gari applied

only for DIB (as opposed to DIB and SSI) and her DLI "expired . . . several years ago," in

December 2018. R. 63; *see also* R. 39, 49, 61–64. Thus, this was "not [a] case" where the ALJ

needed to "go through [the] current" date to determine if Gari was entitled to disability benefits.

R. 64; *see* R. 63–64. Gari's attorney agreed that her remote DLI was "a significant issue in this

case." *See* R. 63.

*

ALJ Munday issued an unfavorable decision on August 31, 2022. R. 15–26. At step one,

she found that Gari had not worked "during the period from her alleged onset date of November

29, 2017 through her date last insured of December 31, 2018." R. 17. Gari had two severe MDIs

during this time: "degenerative joint disease of the right knee/post traumatic osteoarthritis of the

right knee and status-post failed ACL repair" in the right knee. *Id.* (punctuation corrected). All

other physical MDIs mentioned in the record, including a sprained left ankle and fractured right

ankle status-post reconstructive surgery were "non-severe impairments."[4] R. 17–18. In

particular, the ALJ noted that Gari injured her left ankle in November 2019 and injured her right

ankle in July 2020, both of which were after her DLI. *See* R. 18 (citing R. 595, 789, 809, 839,

841). At step three, ALJ Munday concluded that Gari's severe right-knee MDIs did not meet or

medically equal either Listing 1.17, for reconstructive surgery or surgical arthrodesis of a major

weight-bearing joint, or Listing 1.18, for abnormality of a major joint in any extremity. *See* R.

---

[4] ALJ Munday also found that Gari's diagnosed attention deficit hyperactivity disorder was a non-severe
mental MDI during the relevant time because the disorder caused "no limitations" in any of the four broad
areas of mental functioning. R. 18–19. Gari's arguments on appeal relate to her physical MDIs and
alleged functional limitations. *See* Pl.'s Br. 1–4, ECF No. 8. She does not challenge the ALJ's assessment
of her mental impairments. *See id.*

19–20 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.17, 1.18). Relevant to both Listings, ALJ Munday found "no evidence during the period at issue of a documented need for a walker, bilateral canes or crutches, or a wheeled and seated mobility device involving the use of both hands." *Id.* (citing R. 445–53 (Ex. 3F, Aug. 2018); R. 456–507 (Ex. 4F, Feb. 2019)); *accord* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.17(A)–(C), 1.18(A)–(D)(1) (eff. Apr. 2, 2021 to present).

ALJ Munday then evaluated Gari's residual functional capacity ("RFC") through December 31, 2018.[5] *See* R. 20–24. She found that Gari could have performed "sedentary work," including occasionally lifting/carrying up to ten pounds and frequently lifting/carrying fewer than ten pounds; standing and/or walking for at most two hours in an eight-hour workday; and sitting for about six hours in an eight-hour workday.[6] R. 20 (citing 20 C.F.R. § 404.1567(a)). She was further limited to frequent stooping and occasional crouching and climbing ramps/stairs, but no kneeling, crawling, or climbing ladders, ropes, or scaffolds; no pushing or pulling with the right lower extremity; and only occasional exposure to vibrations and hazardous conditions. *Id.* Finally, Gari would have needed "the option to elevate her right lower extremity during breaks and lunch." *Id.*; *see also* R. 21–23, 26. ALJ Munday rejected counsel's argument that Gari "need[ed] to elevate [her] leg for 10 minutes every hour" before her DLI. *See* R. 22–23 (citing R. 440, 456–58, 523–24, 532–33, 781, 975); R. 26 (citing R. 58–59).

---

[5] A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her MDIs and related symptoms or treatment. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). As a matter of law, however, a "younger individual age 18–44" years is not entitled to disability benefits simply because her severe MDI(s) restricts her to sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(h)(4)(i) ("[T]he functional capacity for a full range of sedentary work represents a sufficient number of jobs to indicate substantial vocational scope for those individuals age 18–44, even if they are illiterate.").

At step four, ALJ Munday found that Gari had the following past relevant work: (1) "manager, properties," skilled, generally "light" exertion work, but "medium" exertion work[7] as Gari actually performed the job; (2) "manager, hotel/motel," skilled, "sedentary generally," but "heavy" exertion work[8] as actually performed; and (3) customer complaint clerk, skilled, "sedentary as actually and generally performed." R. 24 (citing R. 55–56). After comparing Gari's RFC to each occupation's demands, ALJ Munday found that Gari could have gone back to work as a customer complaint clerk "as actually and generally performed," or to either of the manager jobs as "generally performed." R. 24–25 (citing R. 56–58). Alternatively, she found at step five that a person with Gari's RFC and vocational profile could have performed certain unskilled sedentary occupations (order clerk, addresser, charge account clerk) that offered a significant number of jobs in the national economy. R. 25 (citing R. 56–58). Accordingly, ALJ Munday concluded that Gari was not disabled from November 29, 2017, through December 31, 2018. R. 26. The Appeals Council declined to review that decision, R. 1–5, and this appeal followed.

### III. Discussion

To qualify for DIB, Gari needed to prove that she had a severe MDI(s) that prevented her from working eight hours a day, five days a week for any twelve continuous months between November 29, 2017, and December 31, 2018. R. 15, 26; *see Barnhart v. Walton*, 535 U.S. 212,

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c).

[8] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d). Light, medium, and heavy work all require the ability to stand and/or walk for about six hours in an eight-hour workday and to sit for the remaining two hours. *See Joyce C. v. O'Malley*, No. 4:22cv122, 2024 WL 774365, at *4 (W.D. Va. Feb. 26, 2024). Conversely, sedentary work requires the ability to sit for about six hours during an eight-hour workday and to stand and/or walk for the remaining two hours. *See Neal v. Astrue*, Civ. No. JKS 09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010).

217–19 (2002); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340–42 (4th Cir. 2012). ALJ

Munday was required to consider all the relevant evidence in Gari's record, including ALJ

Robinson's prior administrative findings and any medical or other evidence created after Gari's

DLI that offered some insight into Gari's medical condition and related functional limitations

from November 29, 2017, through December 2018. *See generally Bird*, 699 F.3d at 341–42;

*Parker v. Berryhill*, 733 F. App'x 684, 697 (4th Cir. 2018); *Albright v. Comm'r of Soc. Sec.*

*Admin.*, 174 F.3d 473, 477–78 (4th Cir. 1999). Her written decision must also build an accurate

and logical bridge from specific evidence in the record to her material findings and conclusions.

*See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), *superseded on other grounds as*

*recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). This Court must affirm the ALJ's

decision if it applied the correct legal standards and its factual findings are supported by

substantial evidence. *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017).

*

Gari challenges ALJ Munday's denial of benefits on three grounds. *See* Pl.'s Br. 1–3.

First, she objects that the agency "failed to have [her] evaluated, in person, by any physician." *Id.*

at 3. Gari's counseled brief notes that she "asked repeatedly for over 5 years"[9] for the agency "to

provide [its] own doctor to evaluate her knee and to offer an opinion" because Gari "has been

---

[9] Counsel does not cite any record evidence to support this assertion. *Id.* at 3. Sometime after July 2, 2019, Gari (through her attorney) informed DDS, "I have no upcoming appointments scheduled with orthopedic doctors says [sic] my right knee failure is going to continue to get worse and that another reconstruction isn't an option because of the arthritis in my right knee. *I would be fully open to seeing one of your doctors*." R. 332 (emphasis added); *see* R. 328. In August 2022, Gari told ALJ Munday that she "thought maybe . . . at some point [she] would see one of [the agency] doctors." R. 62. Her attorney then added, "I think what she's indicating is she would be very receptive *if* the Administration would want to send her" for a post-hearing physical exam. *Id.* (emphasis added). These statements are not "requests" for a physical CE. *Cf. Gatling v. Astrue*, No. 2:11cv21, 2012 WL 4359435, at *7 (E.D.N.C. June 28, 2012) (rejecting argument that ALJ failed to develop the record where claimant's attorney neither advised ALJ that the record was incomplete nor asked for ALJ's help in obtaining additional materials).

told by several physicians that her knee cannot be repaired, nor is she a candidate for a total knee replacement, therefore, according to her own physicians, this is a lifelong condition that cannot be corrected and will only worsen with time and age." *Id.* Counsel's brief does not develop any argument on this point. *See Janell W.*, 2023 WL 4456848, at *4 (citing *Grayson O Co.*, 856 F.3d at 316 ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)). For example, counsel does not argue that "the evidence as a whole [was] insufficient to allow" ALJ Munday to make a decision on Gari's DIB claim, which is one situation where the agency "may purchase" a CE for a claimant, 20 C.F.R. § 404.1519a(b). *See Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) ("The regulations state that the ALJ has discretion in deciding whether to order a consultative examination." (citing 20 C.F.R. § 404.1519a)).

Nor could he. A claimant's evidentiary record only needs to "be 'complete' enough [for the ALJ] to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity" during the relevant period. *Kersey v. Astrue*, 614 F. Supp. 2d 679, 693–94 (W.D. Va. 2009) (citing 20 C.F.R. § 404.1513(e)). ALJ Munday found that Gari's record as of August 2022 contained "sufficient evidence to adjudicate" her DIB claim, R. 24, and she specifically rejected two DDS reviewers' opinions that "there was insufficient evidence to assess the severity of [Gari's] impairments and any impact on [her] daily functioning prior to the date last insured." *Id.* (citing R. 97–99, 109–11). ALJ Munday's decision as a whole sets out an accurate and complete summary of all the record evidence bearing on the severity and functionally limiting effects of Gari's allegedly disabling right-knee impairments from November 29, 2017, through December 31, 2018. *See R.* 18–24 (citing R. 40–53, 73, 97–99, 109–11, 308–15, 436–41, 443, 445–53, 456–59, 461, 464–

65, 477, 521–24, 532–33, 591, 595, 673–78, 781, 789, 809, 839–41, 859–61, 979, 1037). This

included surgical notes and physical/orthopedic exam findings dated between August 2016 and

May 2022, *see* R. 436–37 (Aug. 2016), 445–48 (Aug. 2018), 463–64 (Sept. 2018), 456–61, 513–

16 (Feb. 2019), 531–24 (May 2019), 591–95 (Nov. 2019), 675–83, 789–92 (July 2020), 780–81

(Mar. 2020), 809–11 (Aug. 2020), 839–41 (Oct. 2020), 589–61 (Dec. 2020), 979–91 (Dec.

2021), R. 1037–39 (May 2022); X-rays of Gari's right knee, R. 477, 513 (Feb. 2019), 781 (Mar.

2020); multiple opinions from two of her orthopedic physicians, R. 440–41 (Dec. 2016), 442–43

(Jan. & Mar. 2017), 532–33 (July 2019), 673–74 (Mar. 2020); ALJ Robinson's sedentary RFC

finding from November 2017, R. 73; and Gari's statements both to her healthcare providers and

to the agency, R. 40–53, 97–99, 109–11, 308–15, 436.

ALJ Munday also correctly noted that there are "no abnormal findings" about Gari's right

knee from the relevant time, R. 22, because Gari "did not receive any treatment for [these]

impairments during the period from her alleged onset date through her date last insured," R. 21.

*See id.* (citing R. 436, 440–41, 459, 464–65). In August 2018, Gari denied joint swelling,

myalgias, and arthralgias while she was at a dermatology appointment. R. 465. That September,

a routine physical exam showed she had "normal, atraumatic" extremities with "no cyanosis or

edema." R. 464. Gari had "no complaints" about her knee. *See* R. 463. Gari next went to the

doctor's office on February 12, 2019, because she had "had right knee pain" since being in a car

accident the week earlier. R. 21 (citing R. 459). Detailed exams of the right-knee in February,

May, and July 2019 showed initial "swelling and abnormal patellar mobility" with initial rigidity

in the patellar tendon, R. 459 (Feb. 12); consistently normal range of motion, R. 458 (Feb. 18);

R. 459 (Feb. 12); R. 523 (May 1); R. 634 (July 1); R. 642 (July 8); a "very small effusion" with

"very mild crepitus at the patella," R. 458, 523, 634, 642; "pain with subjective instability," R.

458, 523, 634; and, as of May 1, 2019, "some clinical laxity," R. 523, with "a slightly antalgic gait," R. 523–24, 634, 642. That July, Gari was fitted with a custom knee brace to "help with her high intensity activities" and "provide support." R. 643 (July 8). Other post-DLI medical records documented Gari's subjective complaints of chronic right-knee pain that worsened after her car accident in February 2019, *see* R. 459, 781, and reports that her right knee is "weak" and frequently "gives out," R. 591, 979.

"After careful consideration of the entire record," R. 17, ALJ Munday made specific findings about the nature, severity, and duration of Gari's allegedly disabling right-knee impairments, R. 17–20, as well as Gari's RFC "through [her] date last insured" on December 31, 2018, R. 20. *See* R. 20–24, 26. Gari challenges a few of those findings, but her objections are explicitly based on the ALJ's purported "failure to consider" medical evidence in the current record. *See* Pl.'s Br. 2–3 (citing R. 443, 513, 523–24, 532, 632, 634, 673). Gari's counseled brief also does not suggest that new findings on a physical CE conducted *after* Gari's DLI would have shed light on the nature, severity, or functionally limiting effects of Gari's right-knee impairment *before* her DLI—let alone that such additional "evidence might have produced a different result" on Gari's DIB claim. *See Scarberry v. Chater*, No. 94-2000, 1995 WL 238558, at *4 (4th Cir. Apr. 25, 1995) (internal quotation marks omitted). At most, she appears to argue that a post-DLI physical CE might bolster her own doctors' statements advising that her right-knee impairment "is a lifelong condition that cannot be corrected and will only worsen with time and age." Pl.'s Br. 3. Notably, ALJ Munday referenced this prognosis in her summary of the medical evidence. R. 21 (citing R. 436, 440). It simply is not relevant to whether Gari was disabled before her DLI. Accordingly, Gari's first objection is baseless. *See, e.g., Jeffrey v. Berryhill*, Civ. No. 15-15226, 2017 WL 1197830, at *3 (S.D. W. Va. Mar. 31, 2017) ("Although post-DLI evidence may be

11

considered and evaluated in determining whether plaintiff was disabled prior to the DLI, plaintiff
has not explained how new consultative exams will demonstrate that he was disabled prior to
December 31, 2007, arguing only that it will show his impairments have worsened since his last
examinations.").

**

Next, Gari challenges two aspects of ALJ Munday's Listings analysis. *See id.* at 1–2
(citing R. 19–20; 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.18, 14.09). "The listings define
[medical] impairments that would prevent an adult, regardless of his age, education, or work
experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan
v. Zebley*, 493 U.S. 521, 532 (1990); *see* 20 C.F.R. § 404.1525(a). A claimant who meets or
equals a Listing is "conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141
(1987). To make this determination, the ALJ must identify the correct Listing(s) and "compare[]
each of the listed criteria"[10] to the relevant evidence in the claimant's record. *Cook v. Heckle*r,
783 F.2d 1168, 1173 (4th Cir. 1986). The claimant bears the burden of demonstrating that her
severe MDI(s) "satisfies *all* of the criteria of [the corresponding] listing, including any relevant
criteria in the introduction." 20 C.F.R. § 404.1525(c)(3) (emphasis added). This is not an easy
showing to make. *See Zebley*, 493 U.S. at 530 ("For a claimant to show that his impairment
matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests
only some of those criteria, no matter how severely, does not qualify.").

ALJ Munday found that Gari had two "severe" MDIs during the relevant time: (1)
degenerative joint disease with post-traumatic osteoarthritis of the right knee; and (2) status-post

---

[10] "[T]he version of the listings in effect as of the date of the Commissioner's final decision controls."
*Kiser v. Saul*, 821 F. App'x 211, 213 n.1 (4th Cir. 2020). ALJ Munday issued her decision on August 31,
2022. *See* R. 1, 15–26.

failed ACL repair in the right knee. R. 17. She evaluated these impairments under Listing 1.17,

for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, and under

Listing 1.18, for abnormality of a major joint(s) in any extremity. R. 19–20 (citing 20 C.F.R. pt.

404, subpt. P, app. 1 §§ 1.17, 1.18). Gari argues that the ALJ further "should have considered" if

her right knee met or medically equaled a prior version of Listing 14.09(A)(1), which used to set

out the criteria for disabling "inflammatory arthritis," as described in section 14.00(D)(6), with

"persistent inflammation or persistent deformation of . . . [o]ne or more weight bearing joints

resulting in the inability to ambulate effectively." Pl.'s Br. 2 (citing 20 C.F.R. pt. 404, subpt. P,

app. 1 § 14.09(A)(1) (eff. June 16, 2008 to Apr. 2, 2021)).

This argument is baseless. While ALJ Munday did find that Gari had a severe MDI of

"post-traumatic *osteoarthritis* of the right knee," R. 17 (emphasis added), she did not find Gari

had an MDI of "*inflammatory* arthritis" during the relevant time, Pl.'s Br. 2 (emphasis added).

*See* R. 17–24. "Osteoarthrosis and inflammatory arthritis are distinct conditions." *Williams v.*

*Colvin*, No. 4:15cv36, 2016 WL 4581292, at *9 (E.D.N.C. Aug. 2, 2016) (citing "Osteoarthritis,"

*Dorland's Illustrated Medical Dictionary* 1344 (32d ed. 2012)); *accord* 20 C.F.R. pt. 404, subpt.

P, app. 1 §§ 1.00(B)(2), 1.00(I)(1). Because ALJ Munday did not find at step two that Gari had

an MDI of "inflammatory arthritis" during the relevant time, there was no reason for her to

consider whether this alleged MDI met or medically equaled Listing 14.09 at step three. *See* 20

C.F.R. § 404.1520(c)–(d). Gari does not challenge ALJ Munday's failure to find at step two that

she had an MDI of "inflammatory arthritis" during the relevant time. *See* Pl.'s Br. 2. Her Listing

14.09 argument fails on that ground alone.

Moreover, the medical records that Gari cites to support her Listing 14.09 argument, R.

523–24, 632, 634, do not contain any evidence that Gari actually had "inflammatory arthritis"

with clinically documented "inflammation of major joints" in her right leg during the relevant time, 20 C.F.R. pt. 404 subpt. P, app. 1 §§ 14.00(D)(6), 14.09. *See, e.g.*, *Williams*, 2016 WL 4581292, at *9 ("The absence of evidence that plaintiff has inflammatory arthritis precludes him from meeting the diagnostic description of Listing 14.09."); *accord* 20 C.F.R. § 404.1525(c)(3). On the contrary, they show Gari was diagnosed with "[p]ost-traumatic *osteoarthritis* of the right knee," R. 523–24 (emphasis added), based on "moderate to severe lateral compartmental *osteoarthritis*" with "both clinical and subjective instability," R. 632 (emphasis added). The ALJ cited this same medical evidence to support her finding that although Gari's "severe" post-traumatic osteoarthritis of the right knee did not meet or equal Listing 1.18 before her DLI, *see* R. 17–18, the chronic pain and functional limitations caused by this MDI did warrant restricting Gari to sedentary work with restrictions on pushing/pulling with the right leg, postural activities, and exposure to vibrations or workplace hazards, R. 20. *See generally* R. 21–24 (citing R. 456–58, 521–24).

Gari also objects ALJ Munday's Listing 1.18 analysis. Pl.'s Br. 2. In August 2022, Listing 1.18 required Gari to show (as relevant here) an objective abnormality of the right knee "documented by A, B, C, *and* D." 20 C.F.R. pt. 404 subpt. P, app. 1 § 1.18 (eff. Apr. 2, 2021). Subparagraphs A through D required Gari to show:

**A.** Chronic joint pain or stiffness.

AND

**B.** Abnormal motion, instability, or immobility of the affected joint(s).

AND

**C.** Anatomical abnormality of the affected joint(s) noted on:

    1. Physical examination (for example, subluxation, contracture, or bony or fibrous ankylosis); or

    2. Imaging (for example, joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected joint).

AND

**D.** Impairment-related *physical limitation of musculoskeletal functioning* that has lasted, or is expected to last, for a continuous period of at least 12 months, *and medical documentation of at least one* of the following:

1. *A documented medical need* (see 1.00C6a) *for a walker, bilateral canes, or bilateral crutches* (see 1.00C6d) *or a wheeled and seated mobility device involving the use of both hands* (see 1.00C6e(i)); or

2. *An inability to use one upper extremity* to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and a documented medical need* (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

3. *An inability to use both upper extremities* to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

*Id.* § 1.18(A)–(D)(3) (italics added). In her Listing 1.18 analysis, ALJ Munday found that Gari's

record contained "no evidence" of:

[A] chronic joint pain or stiffness, [B] abnormal motion, instability, or immobility, [C] evidence of anatomical abnormality on physical exam or imaging [of Gari's right knee], *and [D] related physical limitation of functioning with medical documentation of*: [D1] a documented medical need for a walker, bilateral canes or crutches, or a wheeled and seated mobility device involving the use of both hands; [D2] an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements and a medical need for a one-handed hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or [D3] an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

R. 19–20 (emphasis added). More specifically, she explained there was "no evidence during the

period at issue of [D1] a documented need for a walker, bilateral canes or crutches, or a wheeled

and seated mobility device involving the use of both hands."[11] R. 20 (citing 445–53 (Aug. 2018);

---

[11] The phrase "documented medical need" means the record contains "evidence from a medical source that supports your need for an assistive device for a continuous period of at least 12 months. This evidence must describe any limitation(s) in your upper or lower extremity function and the circumstances

R. 456–507 (Feb. 18, 2019)); *see also* R. 23 (citing R. 521 (May 1, 2019); R. 532–33 (July 1,

2019)). Indeed, the record contained "no abnormal findings" about Gari's right knee from the

relevant time, R. 22, because Gari "did not receive any treatment for [these] impairments, R. 21,

between December 2016 and February 2019. *See* R. 21–22 (citing R. 436, 440–41, 459, 464–65);

R. 23 ("[T]here is no evidence prior to the date last insured to support the need to . . . use a cane,

walker, or brace. The medical record through the date last insured revealed no swelling or lower

extremity weakness."). Nonetheless, the ALJ recognized that numerous post-DLI medical

records reflected Gari's "failed ACL reconstruction," as well as a "new right ACL tear," and

"chronic ACL insufficiency with severe lateral compartmental osteoarthritis" in the right knee,

which eventually required a custom brace. *See* R. 21–23 (citing R. 458, 521–24, 532, 778);

*accord* R. 457–58 (Feb. 2019); R. 523–24 (May 2019); R. 632–34, 642–43 (July 2019); R. 778–

79 (Mar. 2020). They also showed that Gari needed crutches for 6–8 weeks when she broke her

right ankle in July 2020, *see* R. 789–92, but that she walked "without an assistive device" by the

end of the year, R. 839, 859, 861. *See also* R. 18 ("These injuries occurred after the date last

insured and are not severe impairments for the period at issue." (citing R. 595, 789, 809, 839,

841, 859, 861)).

     Gari asserts that the ALJ "failed to consider" two post-DLI treatment notes from Erik

Mitchell, D.O., R. 513, 524, in concluding that Gari's severe right-knee MDIs "could not satisfy"

Listing 1.18 because "there is no evidence of chronic joint pain or stiffness, abnormal motion,

instability, immobility, etc." Pl.'s Br. 2 (citing R. 19–20, 513, 524); *see* 20 C.F.R. pt. 404, subpt.

P, app. 1 § 1.18(A)–(C) (eff. Apr. 2, 2021). According to Gari, Dr. Mitchell's records show that

her right-knee pain was "chronic" and she needed a "custom brace for support" to address the

---

for which you need to use the assistive device." 20 C.F.R. pt. 404 subpt. P, app. 1 § 1.00(D)(6)(a)
(internal citations omitted).

"significant arthritis" with "laxity and instability" in the right knee. Pl.'s Br. 2 (citing R. 513, 524). Gari's argument fails for two reasons. First, the ALJ's Listing 1.18 conclusion clearly relies on her finding that "[t]here is no evidence during the period at issue" that Gari had "a *documented need* for a walker, bilateral canes or crutches, or a wheeled and seated mobility device involving the use of both hands," R. 20 (emphasis added), which is necessary to satisfy the fourth and final paragraph in Listing 1.18(A)–(D). Gari's counseled brief does not mention this finding, let alone contest it. Pl.'s Br. 3. The absence of such evidence precludes Gari from "meet[ing] *all* of the specified medical criteria" in Listing 1.18(A)–(D). *Zebley*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *see also* 20 C.F.R. § 404.1525(c)(3). Second, while the ALJ did not include Dr. Mitchell's treatment notes in her Listings analysis, R. 19–20, she "expressly considered" their contents in her RFC determination, R. 21–23. *See Crystal F. on behalf of A.M. v. Saul*, No. 4:19cv11, 2021 WL 746012, at *7 (W.D. Va. Feb. 24, 2021). Indeed, the ALJ specifically cited Dr. Mitchell's treatment notes showing Gari's ongoing knee pain with significant osteoarthritis to support her sedentary RFC assessment, R. 22–23. Thus, Gari's argument that ALJ Munday "failed to consider" these records is baseless. *See Crystal F.*, 2021 WL 746012, at *4. Accordingly, I find that the ALJ's listing analysis is supported by substantial evidence.

***

Finally, Gari objects to ALJ Munday's conclusion that two pre-AOD opinions from Craig Reigel, M.D., were "not persuasive" evidence of how often Gari needed to elevate her legs throughout the day during the relevant period. *See* Pl.'s Br. 2–3 (citing R. 440 (Dr. Reigel, Dec. 6, 2016); R. 443 (Dr. Reigel, Mar. 8, 2017)). While Gari's prior DIB claim was pending, her attorney sent Dr. Reigel pre-printed forms asking for his medical opinion about how Gari's right-

knee impairment impacted her ability to work a normal eight-hour day, among other things. *See* R. 440–41 (Dec. 2016); R. 442–43 (Jan. 2017); R. 443 (Mar. 2017). In December 2016, counsel asked if Gari needed to "lie down or be in a reclined position frequently during a normal 8 hour workday due to her continued knee pain and swelling?" R. 440 (spelling corrected). Rather than checking "YES" or "NO" printed under this first question, Dr. Reigel wrote that Gari needed the "ability to sit & elevate [her right] lower extremity." *Id.* He also opined that she could sit (but not stand) for "more than a total of 5 or 6 hours out of a normal 8 hour workday," but he did not say how often or for how long Gari needed to elevate her right leg throughout the day. *Id.* Finally, counsel asked Dr. Reigel for his "yes" or "no" opinion, "based upon a reasonable degree of medical certainty, whether [Gari] is able to engage in any kind of gainful employment that may exist in the national economy considering . . . that [her] conditions have lasted or are expected to last for a period of at least twelve (12) months." *Id.* Dr. Reigel checked the "YES" option. *Id.*

In March 2017, Gari's attorney sent Dr. Reigel one follow-up question about his handwritten answer to the question about whether Gari "frequently" needed to lie down or recline during an eight-hour workday:

> Please state in your opinion, based upon a reasonable degree of medical certainty, whether [Gari] is able to engage in any kind of gainful employment that may exist in the national economy *assuming that no jobs would exist if she must sit and need[s] to elevate her lower extremity as stated in your answer* to question #1 on December 6, 2016.

R. 443 (emphasis added). Dr. Reigel checked the "NO" option. *Id.* (Mar. 8, 2017).

ALJ Munday considered Dr. Reigel's opinions as part of her RFC assessment. *See* R. 20–24. She explained that she did "not find" these pre-AOD opinions "persuasive" in part because Gari did not receive any treatment for her right knee during the relevant time that would support Dr. Reigel's proposed limitations. R. 22; *see* 20 C.F.R. § 404.1520c(a)–(b). She credited Dr. Reigel's initial opinion that Gari needed a job where she could sit and elevate her right leg, R.

440, because those limitations were "consistent with [Gari's] history of right knee pain and failed ACL reconstruction." R. 22; *see* 20 C.F.R. § 404.1520c(c)(2). Indeed, her RFC finding limited Gari to sedentary work that involved "standing and/or walking 2 hours and sitting 6 hours in an 8-hour workday" with the option to elevate her right leg during breaks and at lunchtime.[12] R. 20.

ALJ Munday rejected Dr. Reigel's later opinion (in response to counsel's "more pointed" follow-up question) that Gari could not "engage in any kind of gainful employment . . . assuming that no jobs would exist" if she needed to sit and elevate her right lower extremity "as stated in [Dr. Reigel's] answer to question #1" on the initial form. *See* R. 22. ALJ Munday noted that "is a statement on an issue reserved to the Commissioner," *id.*, which "would direct" the administrative decision that Gari was "disabled" within the meaning of the Act, 20 C.F.R. § 404.1520b(c)(3)(i). Such statements are "inherently neither valuable nor persuasive" to the disability determination, and ALJs are not required to "provide any analysis about how [they] considered such evidence in [their] . . . decision, even under § 404.1520c." 20 C.F.R. § 404.1520b(c).

Gari does not dispute ALJ Munday's stated reasons for finding Dr. Reigel's opinions only partially persuasive. Pl.'s Br. 3; *see Owens v. Kijakazi*, No. 22-1273, 2023 WL 2344224, at *2 (4th Cir. Mar. 3, 2023) (citing 20 C.F.R. § 404.1520c(a)). Instead, she asserts that the ALJ "did not consider" two of Dr. Mitchell's post-DLI medical opinions when she decided to "not give weight" to Dr. Reigel's opinion that Gari "could not perform work unless she was allowed to elevate her leg during the workday." Pl.'s Br. 3 (citing R. 532 (July 1, 2019); R. 673–74 (Mar. 20, 2020)).

---

[12] Gari's argument focuses on the medical-opinion evidence indicating that she "needed to elevate her leg throughout the workday" to an extent that would preclude all gainful employment. *See* Pl.'s Br. 2–3 (citing R. 22, 58–59, 440, 532, 673). She does not mention any other aspect of the RFC assessment. *Id.*; *see Janell W.*, 2023 WL 4456848, at *4.

While this DIB claim was pending, Gari's attorney sent Dr. Mitchell similar pre-printed forms asking for his medical opinion about how Gari's right-knee impairment impacted her ability to work a normal eight-hour day, among other things. *See* R. 532–33, 673–74. In July 2019, counsel asked if Gari needed "to elevate her right leg and recline frequently during a normal 8 hour workday due to her continued knee pain and swelling? If so, how often?" R. 532. Dr. Mitchell checked the "YES" opinion and wrote, "10 min of elevation for every 1 hr she is on her feet." *Id.* He also opined that Gari could "sit & stand more than a total of 5 to 6 hours out of a normal 8 hour day." *Id.* Finally, counsel asked Dr. Mitchell for his "yes" or "no" opinion, "based upon a reasonable degree of medical certainty, whether [Gari] is able to engage in any kind of gainful employment that may exist in the national economy considering . . . that [her] conditions have lasted or are expected to last for a period of at least twelve (12) months." R. 533. Dr. Mitchell marked the "YES" option. *Id.*

Gari's attorney sent Dr. Mitchell another pre-preprinted questionnaire in March 2020. R. 673–74 (Mar. 20, 2020). As most relevant here, he asked Dr. Mitchell to answer "yes" or "no" to the following question: "If an employer would NOT allow [Gari] to elevate her leg 10 minutes of every hour, would she be able to be gainfully employed?" R. 673. *But see* R. 532 (Dr. Mitchell opining that Gari could "sit & stand more than a total of 5 to 6 hours out of a normal 8 hour day," but needed "10 min of elevation for every 1 hr she is on her feet"). Dr. Mitchell checked the "NO" option. R. 673. The same day, Dr. Mitchell had a "lengthy conversation with [Gari] regarding her right knee." R. 780 (Mar. 20, 2020). He opined that "most of [her] pain is due to an insufficient ACL and severe lateral compartmental osteoarthritis" and that, given Gari's age, he "d[id] not think at this point she [was] a candidate for total arthroplasty." *Id.* He also opined that Gari "could potentially be gainfully employed" notwithstanding her right-knee impairments. *Id.*

She would "likely need a sedentary job" and "would have to be able to elevate her lower extremity periodically throughout the day." *Id.* Dr. Mitchell did not say how frequently, or for how long, Gari needed to elevate her leg during the day. *See id.*

ALJ Munday found that Dr. Mitchell's post-DLI opinions were "partially persuasive" evidence of Gari's impairment-related functional limitations during the relevant time. R. 23. The "narrative statement" in his March 20, 2020 treatment notes was "persuasive" because it was supported by Gari's "right knee pain and ACL failure" and it was not provided in response to a form questionnaire. *Id.* (citing R. 780). She rejected Dr. Mitchell's suggestion, made in response to counsel's pointed question, that Gari needed "to elevate her leg 10 minutes of every hour" because there was "no evidence" in pre-DLI medical records to support this specific restriction. *Id.* (citing R. 673). Moreover, Dr. Mitchell only started treating Gari after her DLI, and none of his treatment notes from 2019 "include a directive to elevate her leg." *Id.*; *see* R. 21–22 (citing R. 456–61, 531–24).

As before, Gari does not contest ALJ Munday's analysis of Dr. Mitchell's opinions. Pl.'s Br. 2–3; *see Owens*, 2023 WL 2344224, at *2 (citing 20 C.F.R. § 404.1520c(a)). Her assertion that the ALJ "did not consider" Dr. Mitchell's most restrictive opinion about Gari's need to elevate her leg (i.e., for 10 minutes every hour) alongside Dr. Reigel's opinion on the same topic is baseless. *See Crystal F.*, 2021 WL 746012, at *4. ALJ Munday expressly considered both physicians' opinions in light of the pertinent factors and other relevant evidence in the record, including Dr. Mitchell's arguably less-restrictive opinion in his contemptuous treatment notes, and explained why her RFC finding allowed Gari to elevate her right leg during breaks and at lunchtime. *See* R. 23. Gari simply disagrees with the ALJ's conclusion that she did not need to elevate her leg for ten minutes every hour. *See* Pl.'s Br. 3. But this Court cannot review that

conclusion. Its only function is to determine whether the ALJ's decision is supported as a matter of fact and law. "There were a number of conflicts in the evidence" on this particular limitation, and this Court will "not second guess the ALJ in resolving those conflicts." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). "In [my] view, the justification provided by the ALJ— albeit somewhat sparse—was sufficient to allow [this Court] to determine that the ALJ performed an adequate review of the whole record and that the decision is supported by substantial evidence." *Id.* Accordingly, I find that the ALJ's decision is supported by substantial evidence.

### IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge deny Gari's dispositive motion, ECF No. 9, affirm the Commissioner's final decision under the fourth sentence of 42 U.S.C. § 405(g), and dismiss the case.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding district judge.

The Clerk shall send certified copies of this Report and Recommendation to the parties.

ENTER: August 30, 2024

Joel C. Hoppe
United States Magistrate Judge